UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| TIFFANY HALL, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 24-3332 |
| | ) | |
| MELINDA EDDY *et al.*, | ) | |
|     Defendants. | ) | |

<u>ORDER</u>

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court for screening is a Complaint (Doc. 1) filed under 42 U.S.C § 1983 by Plaintiff Tiffany Hall, an inmate at Logan Correctional Center ("Logan"). Plaintiff also filed Motions for Injunctive Relief (Docs. 4, 6), Leave to File an Amended Complaint (Doc. 14), Subpoena (Doc. 15), Recusal (Doc. 20), and Status (Docs. 11, 18, 19).

**I.    Complaint**

**A. Screening Standard**

The Court must "screen" Plaintiff's Complaint and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id*. In reviewing the Complaint, the court accepts the factual allegations as accurate, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be

provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

**B. Factual Allegations**

Plaintiff's pleading alleges constitutional violations at Logan against the following individuals and entity: Illinois Department of Corrections ("IDOC") Director Latoya Hughes, former IDOC Director Rob Jeffreys, former Warden Jean Marie Case, former acting Warden Melinda Eddy; Warden Michael Long, Major Nathan Thomas, Internal Affairs Head Chad McGinnis, Investigator Justin Russell, Corrections Officers McCarty and Ryan Robinson, and Logan.

Plaintiff claims that from November 2022 to December 2023, Defendants Case, Eddy, Hughes, Jeffreys, Long, and Thomas were negligent and failed to protect her by (1) allowing male staff to perform unclothed strip searches on her person without being trained in cross-gender strip searches (Pl. Compl., Doc. 1 at 8:1), (2) making it optional for male staff to perform unclothed strip searches of transgender offenders, which Plaintiff asserts causes "dependency, breeding ground for sexual abuse and sexual harassment" (*Id*. at 8:2.), and (3) forcing Plaintiff to get unclothed in front of Defendants McCarthy and Robinson (*Id*. at 8:3.). Plaintiff further claims that Defendants Case, Eddy, Hughes, Jeffreys, Long, McGinnis, Russell, and Thomas were negligent and failed to protect her by refusing to initiate a Prison Rape Elimination Act (PREA) protocols when they learned about Plaintiff's allegations of sexual harassment against Defendants Robinson and McCarty (*Id*. at 9:4).

Plaintiff asserts that Defendants Thomas and Long have strip-searched her, and Defendants McCarty and Robinson sexually harassed her while performing strip searches through disparaging verbal comments and using restraints in a sexually suggestive manner. (*Id.* at 8:1, 9:5; 10:6.)

**C. Analysis**

State officials must "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). For a state official to be held liable for failure to protect, a plaintiff must satisfy a test that contains both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires the risk of harm to be "sufficiently serious." *Id.* The subjective component focuses on whether the official had a "sufficiently culpable state of mind." *Id.*

To satisfy the subjective component, the official must know of and disregard an excessive risk to a prisoner's safety. *Id.* at 837. "In failure to protect cases, '[a] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety.'" *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996)); *see also McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991). To support an inference that an official knew of a substantial risk of harm, the inmate's complaint to the official typically must identify "a specific, credible, and imminent risk of serious harm." *Gevas*, 798 F.3d at 481.

Plaintiff does not state a failure to protect the claim as she does not provide facts that establish or permit a reasonable inference as to either component. Additionally, Plaintiff does not state a constitutional violation under § 1983 based on an allegation of

negligence. *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("[N]egligence, even gross negligence, does not violate the Constitution."); *see also Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) ("[T]he Eighth Amendment is violated by acts or omissions that exhibit deliberate indifference; mere negligence is insufficient. . . . Similarly, negligent conduct by a state official does not implicate the Due Process Clause.").

Plaintiff also does not state a claim under the PREA, which does not establish a private cause of action. *See Ross v. Gossett*, 2016 WL 335991, at *4 (S.D. Ill. Jan. 28, 2016 (The PREA "does not create a private cause of action" but instead "establishes finding of facts, sets forth statistics, recites research, adopts standards, and provides for grant money") (collecting cases); *see also Sims v. Doe*, 2018 WL 4027632, at *3 (S.D. Ind. Aug. 22, 2018) ("The PREA does not create a private cause of action in federal court.") (citing *Bentley v. Baenen*, 2018 WL 1108701 (E.D. Wis. Feb. 27, 2018)).

Plaintiff does not state a claim against Logan. A building, such as a jail or a prison, cannot be sued under § 1983. *Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012); *see also White v. Knight*, 710 F. App'x 260, 262 (7th Cir. 2018) ("[T]he fact that a building is owned by a corporate entity or a government agency does not make the building a suable person under § 1983.").

"There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). "[O]nly those searches that are maliciously motivated, unrelated to institutional security,

and hence totally without penological justification are considered unconstitutional." *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004). Even where a valid penological reason justifies a search, how "the searches were conducted must itself pass constitutional muster." *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009). Therefore, a search of a prisoner may violate the Eighth Amendment if it is "conducted in a harassing manner intended to humiliate and inflict psychological pain." *Calhoun*, 319 F.3d at 939.

Plaintiff's account is sufficient to state an Eighth Amendment claim against Defendants Long, McCarty, Robinson, and Thomas based on strip searches conducted and the alleged comments made by McCarty and Robinson during their search of Plaintiff. *See West v. Radke*, 48 F.4th 836, 850 (7th Cir. 2022) (stating "[c]ourts have long recognized that sex is a trait relevant to inmate privacy" and citing cases explaining it is a greater invasion of privacy to have one's naked body viewed by a member of the opposite sex in case addressing cross-sex strip searches in prison); *see also Gillis v. Pollard*, 554 F. App'x 502, 505 (7th Cir. 2014) ("A prison guard carrying out a prison security measure can violate the Eight Amendment in one of two ways: by maliciously inflicting pain or injury, *see Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012), or by performing some action that is 'intended to humiliate the victim or gratify the assailant's sexual desires,' *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012).").

II.     **Injunctive Relief**

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *accord Winter v. Natural Res. Def. Council*,

*Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right").

The purpose of a temporary restraining order and, ultimately, a preliminary injunction is to preserve the status quo pending a final hearing on the merits of the case. *American Hospital Ass'n v. Harris*, 625 F.2d 1328, 1330 (7th Cir. 1980). "The standards for issuing temporary restraining orders are identical to the standards for preliminary injunctions." *Anthony v. Village of South Holland*, 2013 WL 5967505, * 2 (N.D. Ill. Nov. 8, 2013). "To determine whether a situation warrants such a remedy, a district court engages in an analysis that proceeds in two distinct phases: a threshold phase and a balancing phase." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of America, Inc.*, 749 F.3d 1079, 1085-86 (7th Cir. 2008).

"To survive the threshold phase, a party seeking a preliminary injunction must satisfy three requirements." *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 965 (7th Cir. 2018) (quoting *Girl Scouts*, 549 F.3d at 1086). The movant must show that: "(1) absent a preliminary injunction, [she] will suffer irreparable harm in the interim period [before] final resolution of [her] claims; (2) traditional legal remedies would be inadequate; and (3) [her] claim has some likelihood of succeeding on the merits." *Id*. The court proceeds to the balancing phase after the moving party satisfies each threshold requirement. *Id*. at 966.

Plaintiff filed successive Motions for Injunctive Relief. Plaintiff's initial filing requests that the Court require Defendants Eddy and Hughes to implement nine specific procedures related to strip searches of her person. (Doc. 4 at 2-6.) Similarly, Plaintiff's

second filing reiterates her harassment claims against Defendants McCarty and Robinson and requests that the Court Order Defendant Hughes to implement related personnel changes given her allegations. However, because neither filing addresses the threshold requirements noted *supra*, Plaintiff's Motions for Injunctive Relief (Docs. 4, 6) are denied.

### III.  Recusal

"A motion to disqualify a judge [under 28 U.S.C.] § 144 is allowed if a party files a timely and sufficient affidavit that the judge has a personal bias or prejudice against a party." *Tezak v. United States*, 256 F.3d 702, 716–17 (7th Cir. 2001). "Unlike § 144, which requires recusal of a judge when there is actual personal bias or prejudice, 28 U.S.C. § 455(a) requires a judge to recuse [herself] when his presiding over a case would create an appearance of bias." *Id.* at 717 n.16; *see also* 28 U.S.C. § 455(a) ("Any justice, judge, or magistrate judge of the United States shall disqualify [herself] in any proceeding in which his impartiality might reasonably be questioned."). Section 455(b) lists additional circumstances where a judge should disqualify himself. 28 U.S.C. § 455(b).

The basis for Plaintiff's motion for recusal (Doc. 20) originates from her claim that the Court has not entered a timely Merit Review Order in this case, which is insufficient. *See Hook v. McDade*, 89 F.3d 350, 355 (7th Cir. 1996) ("[R]ecusal is required only if the actual bias or prejudice is proved by compelling evidence.") (internal quotation marks omitted); *see also O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 988 (7th Cir. 2001) ("[A] judge's bias against a litigant must 'arise from an extrajudicial source.'") (quoting *Hook*, 89 F.3d at 355).

Furthermore, the "personal bias" required to justify recusal is prejudice from sources other than participation in the proceedings or prior contact with related cases. 28 U.S.C. § 455; *see also In re City of Milwaukee*, 788 F.3d 717, 720 (7th Cir. 2015) ("[O]pinions formed by [a] judge [based on] facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.") (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Additionally, "[a]dverse decisions do not establish bias or even hint at bias." *Khor Chin Lim v. Courtcall, Inc.*, 683 F.3d 378 (7th Cir. 2012). Accordingly, the Court denies Plaintiff's Motion for Recusal (Doc. 20).

## IV.   Amend Complaint, Subpoena, and Status Motions

Plaintiff's Motion to Amend Complaint (Doc. 14) requests permission to clarify and add claims to her existing suit, which is denied. The Court does not accept piecemeal amendments. If Plaintiff opts to file an amended pleading, it must stand independently without reference to her initial filing and contain all claims against all defendants. In other words, Plaintiff's amended pleading must specify the constitutional violation, when it occurred, and the Defendant or Defendants personally involved. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.").

Plaintiff's Motion for Issuance of a Subpoena (Doc. 15) is denied as premature. As explained below, entry of the Court's Merit Review Order begins the service phase. After

Defendants have been served and responded to Plaintiff's Complaint, which usually takes sixty days, the Court will enter a Scheduling Order that provides guidance and deadlines to assist Plaintiff during the discovery process, including the procedure to request subpoenas.

Plaintiff's Motions for Status (Docs. 11, 18, 19) are moot with the entry of the Court's Order.

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Motions for Injunctive Relief (Docs. 4, 6), Leave to File an Amended Complaint (Doc. 14), Issuance of a Subpoena (Doc. 15), and Recusal (Doc. 20) are DENIED.**

2) **Plaintiff's Motions for Status (Docs. 11, 18, 19) are MOOT.**

3) **According to the Court's screening of Plaintiff's Complaint [1] under 28 U.S.C. § 1915A, Plaintiff states Eighth Amendment claims against Defendants Long McCarty, Robinson, and Thomas as noted *supra*. Plaintiff's claims against Defendants proceed in their individual capacity only. Additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or under Federal Rule of Civil Procedure 15.**

4) **The Clerk of the Court is DIRECTED to terminate Jean Marie Case, Melinda Eddy, Latoya Hughes, Rob Jeffreys, Chad McGinnis, Justin Russell, and Logan Correctional Center as parties.**

5) **This case is now in the process of service. The Court advises Plaintiff to wait until counsel has entered an appearance before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before counsel has filed an appearance will be denied as premature. Plaintiff need not submit evidence to the Court unless otherwise directed by the Court.**

6) **The Court will attempt service on Defendants by mailing a waiver of service. Defendant has sixty days from service to file an Answer. If Defendant has not filed an Answer or appeared through counsel within ninety days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After service of process, the Court will enter an order setting discovery and dispositive motion deadlines.**

7) Concerning a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall submit to the Clerk said Defendant's current work address or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

8) Defendants shall file an Answer within sixty days of the date the Clerk sends the waiver. A motion to dismiss is not an answer. The Answer should include all defenses appropriate under the Federal Rules. The Answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the Answer is necessary or will be considered.

9) This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Therefore, Plaintiff does not need to mail copies of motions and other documents that Plaintiff has filed with the Clerk to Defendants' counsel. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Instead, Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

10) Defendants' counsel is granted leave to depose Plaintiff at his place of confinement. Defendants' counsel shall arrange the time for the deposition.

11) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to inform the Court of a change in mailing address or phone number will result in the dismissal of this lawsuit with prejudice.

12) If a Defendant fails to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals service on that Defendant and will require that Defendant to pay the total costs of formal service under Federal Rule of Civil Procedure 4(d)(2).

13) **The Court directs the Clerk to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.**

14) **The Court directs the Clerk to attempt service on Defendants under the standard procedures.**

ENTERED July 15, 2025.

                                             s/ *Colleen R. Lawless*
                                      COLLEEN R. LAWLESS
                              UNITED STATES DISTRICT JUDGE