E-FILED
Tuesday, 25 August, 2026 11:48:54 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **TIFFANY HALL,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 24-3332** |
| | ) | |
| **THOMAS et al.,** | ) | |
| **Defendants.** | ) | |

**ORDER**

Plaintiff Tiffany Hall, an inmate at Logan Correctional Center (Logan) diagnosed with gender dysphoria[1], filed Motions for Leave to File an Amended Complaint under 42 U.S.C. § 1983 (Doc. 35) and Injunctive Relief (Doc. 36) that are before the Court. Defendants have responded (Doc. 45) to Plaintiff's Motion for Injunctive Relief.

## I. Preliminary Injunction

### A. Standard

The purpose of a preliminary injunction is to preserve the status quo pending a final hearing on the merits of the case. *American Hospital Ass'n v. Harris*, 625 F.2d 1328, 1330 (7th Cir. 1980). "To determine whether a situation warrants such a remedy, a district court engages in an analysis that proceeds in two distinct phases: a threshold phase and a balancing phase." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of America, Inc.*, 749 F.3d 1079, 1085-86 (7th Cir. 2008).

[1] Consistent with Plaintiff's filings, the Court will refer to Plaintiff using he/him pronouns.

"To survive the threshold phase, a party seeking a preliminary injunction must satisfy three requirements." *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 965 (7th Cir. 2018) (quoting *Girl Scouts*, 549 F.3d at 1086). The movant must show that: "(1) absent a preliminary injunction, [he] will suffer irreparable harm in the interim period [before] final resolution of [his] claims; (2) traditional legal remedies would be inadequate; and (3) [his] claim has some likelihood of succeeding on the merits." *Id*. After the moving party satisfies each of the threshold requirements, the court proceeds to the balancing phase. *Id*. at 966. The balancing phase requires a court to weigh "the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Id*. (internal quotation marks omitted).

The Prison Litigation Reform Act (PLRA) limits the scope of the court's authority to enter an injunction in the corrections context. *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

**B. Plaintiff's Allegations**

On January 9, 2026, Plaintiff filed a Motion for Injunctive Relief (Doc. 36) alleging Defendant Corrections Officer Robinson kicked Plaintiff's cell door and harassed him on December 22, 2025. Plaintiff also alleges Robinson disclosed he had been in a "mental

health/rehab facility" after being employed by the Illinois Department of Corrections (IDOC) and that Robinson "[o]n two occasions . . . stated to Plaintiff that he was going to kill someone." (*Id*. at 1:2, 2:5.) Plaintiff asserts that the State of Illinois prohibits individuals from possessing firearms or ammunition who have been placed in a mental institution and that IDOC requires the proper use of firearms, citing the example of a corrections officer's use of a firearm when assigned to an IDOC facility tower. (*Id*. at 1:3-4.)

Plaintiff also claims Defendant Robinson has sexually abused him on two occasions by purposely touching Plaintiff's buttock and requiring Plaintiff, who was on suicide watch, to perform fellatio on Robinson. (*Id*. at 3:11.) Plaintiff further alleges that during January 1-3, 2026, Robinson exposed his genitalia to Plaintiff while assigned to the control unit in housing unit 15. (*Id*. at 3:13.) Plaintiff also generally claims "Robinson has repeatedly sexually harassed [Plaintiff] from late 2022 to January 3, 2026." (*Id*. at 3:12.)

Plaintiff moves for the Court to grant his eleven requests for injunctive relief including but not limited to the following: 1) two requests for Logan to retain video footage; 2) prohibiting Defendant Robinson from contacting Plaintiff; 3) referring Robinson for prosecution and an employee review hearing; 4) mandating Robinson undergo a mental health evaluation and illicit drug screening; 5) requiring Robinson to disclose any admissions to mental health and drug rehabilitation facilities in the past five years to the Illinois State Police; 6) order Robinson to obtain a waiver to possess a firearm and ammunition; and 7) release the complete results of any investigations arising from

Robinson's sexual abuse and self-exposure to the Illinois State Police and Logan County State's Attorney. (*Id*. at 3-5:1-11.)

In response, Defendant Robinson provides an affidavit denying that he engaged in the acts Plaintiff alleges or that he is in violation of any IDOC policy regarding his ability to possess firearms or ammunition. (Robinson Decl., Doc. 45-1 at 1-2:3-11.) Robinson also confirms that since Plaintiff has filed his motion, Robinson's work assignment changed to working at Logan's main external gate. (*Id*. at 1-2:3-11.) He has not had contact with Plaintiff since before Plaintiff filed his Motion for Injunctive Relief. Although Robinson concedes that he is not in control of his work assignments, he does not expect to be reassigned to Plaintiff's housing unit if his work assignment does change. (*Id*. at 2:12-14.)

**C. Analysis**

The Seventh Circuit has described an injunction requiring affirmative action as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued" because they require the court to command a defendant to take a particular action. *Id*.

The Court previously denied Plaintiff's Motions for Injunctive Relief requesting IDOC to implement nine procedures related to strip searches and eight changes given his harassment allegations because he failed to address any aspect of his threshold burden for injunctive relief. (Doc. 21 at 6-7.) Similarly, the Court denies Plaintiff's Motion for Injunctive Relief (Doc. 36) because he fails to address the threshold requirement for the

injunctive relief requested.

Even if Plaintiff has attempted to do so, he cannot demonstrate irreparable harm before final resolution of his underlying claims because, according to Defendant Robinson's sworn declaration, he is no longer assigned responsibilities that will place him in contact with Plaintiff.

Furthermore, the broad injunctive relief Plaintiff seeks is based on events unrelated to the Eighth Amendment strip search and failure-to-protect claims asserted in this case, as noted *infra*. Thus, "[w]here there is no relationship between the underlying claim and the requested injunctive relief, the Court lacks the authority to order the relief." *Donelson v. Pfister*, 2018 WL 3572520 (C.D. Ill. July 25, 2018); *see also Pacific Radiation Oncology, LLC v. Queen's Medical Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (concluding that "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint.")

Regarding Plaintiff's request to preserve video evidence, the Court cannot order Defendants to preserve video that was never recorded, nor can the Court require Defendants to preserve video that has already been destroyed based on IDOC policy. However, to the extent video evidence exists of the earlier-mentioned events on December 22, 2025, and January 1 to 3, 2026, Defendants shall preserve that evidence. If Plaintiff wants to receive any video evidence that may still exist, he will need to send Defendants a proper discovery request asking for that evidence after the discovery phase begins. If in existence, Defendants shall then ensure Plaintiff's viewing of the video

evidence during the discovery period. *See Ogurek v. Gabor*, 827 F.3d 567, 568 (7th Cir. 2016) ("[A] district judge err[s] in refusing to compel production of [a] security video" where the security video "would have been the dispositive piece of evidence in [the] case.").

## II. Amended Complaint

### A. Background

In November 2024, Plaintiff filed a Complaint alleging constitutional violations at Logan. (Doc. 1 at 8-12.) Following screening, the Court determined Plaintiff stated Eighth Amendment claims against Defendant Warden Michael Long, Corrections Major Nathan Thomas, and Corrections Officers Matthew McCarty and Ryan Robinson based on strip searches conducted and the alleged comments made by McCarty and Robinson during their search of Plaintiff.

### B. Screening Standard

The Court must "screen" Plaintiff's amended pleading and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id*. In reviewing the pleading, the court accepts the factual allegations as accurate and liberally construes them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

**C. Factual Allegations**

Plaintiff's pleading alleges constitutional violations at Logan against the following Logan officials: former Warden Jean Marie Case, former acting Warden Melinda Eddy, Defendants Long and Thomas, Internal Affairs Supervisor Chad McGinnis, Internal Affairs Investigator Justin Russell, and Defendants McCarty and Robinson.

Plaintiff initially claims that from November 2022 to December 2023, Defendants McCarty and Robinson's duties included performing strip searches and standing watch as Plaintiff showered during his time in crisis watch. (Doc. 35-1 at 4:14-15.) Plaintiff claims he performed fellatio on Robinson in early December 2022, and that on December 29, 2023, Robinson grabbed Plaintiff's buttock as he showered. (*Id*. at 16.) Plaintiff further claims that from November 2022 to March 2023, McCarty sexually abused him several times by forcing Plaintiff to fondle his phallus while performing Plaintiff's unclothed strip searches. (*Id*. at 17.) Additionally, Plaintiff asserts that from November 2022 to December 31, 2023, and November 2022 to August 2025, McCarty and Robinson, respectively, made sexually disparaging verbal comments and used restraints in a sexually suggestive manner (*Id*. at 5:18-19, 25.)

On January 9, 2023, Plaintiff reported to a corrections lieutenant and corrections sergeant, whom Plaintiff does not name as Defendants, that he was being sexually assaulted by thirteen male staff members, which included Defendants McCarty and Robinson. Plaintiff asked to use the Prison Rape Elimination Act (PREA) hotline. Both corrections officials told Plaintiff that Defendant Case explicitly stated that Plaintiff could

not utilize the PREA hotline. (*Id*. at 10:36-37.) Plaintiff claims that Defendants Case, McGinnis, and Thomas "refused to initiate PREA protocol." (*Id*. at 10:36-39, 41.)

On December 5, 2023, Plaintiff reported the sexual abuse and harassment he experienced by Defendant McCarty to Defendant McGinnis, but McGinnis took no action. (*Id*. at 13:48.) On December 31, 2023, Defendants Eddy and Long were notified of Plaintiff's reports of sexual abuse and harassment by McCarty, but they took no action. (*Id*. at 13:49.) On January 9, 2023, Plaintiff claims Defendants Case, Long, Russell, and Thomas were notified that Plaintiff had initiated a hunger strike asking that the sexual abuse and harassment he experienced be investigated, but they refused to investigate. (*Id*. at 11:42.)

Plaintiff claims that despite his allegations made via the PREA hotline, grievances, and incident reports, Defendant Robinson was allowed to supervise Plaintiff as he showered, resulting in Robinson sexually assaulting him on December 29 and 31, 2023.

**D. Analysis**

Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 35) is granted.

Plaintiff's account is sufficient to state an Eighth Amendment claim against Defendants McCarty and Robinson. *See Gillis v. Pollard*, 554 F. App'x 502, 505 (7th Cir. 2014) ("A prison guard carrying out a prison security measure can violate the Eight Amendment in one of two ways: by maliciously inflicting pain or injury, *see Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012), or by performing some action that is 'intended to humiliate the victim or gratify the assailant's sexual desires,' *Washington v. Hively*, 695

F.3d 641, 643 (7th Cir. 2012).”).

State officials must “take reasonable measures to guarantee the safety of the inmates.” *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). For a state official to be held liable for failure to protect, a plaintiff must satisfy a test that contains both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires the risk of harm to be “sufficiently serious.” *Id.* The subjective component focuses on whether the official had a “sufficiently culpable state of mind.” *Id.*

To satisfy the subjective component, the official must know of and disregard an excessive risk to a prisoner’s safety. *Id*. at 837. “In failure to protect cases, ‘[a] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety.’” *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996)); *see also McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991). To support an inference that an official knew of a substantial risk of harm, the inmate’s complaint to the official typically must identify “a specific, credible, and imminent risk of serious harm.” *Gevas*, 798 F.3d at 481.

Plaintiff’s account is sufficient to state an Eighth Amendment failure to protect claim against Defendants Case, Eddy, Long, McGinnis, Russell, and Thomas.

**IT IS THEREFORE ORDERED:**

**1) Plaintiff’s Motion for Injunctive Relief (Doc. 36) is DENIED.**

**2) According to the Court’s screening of Plaintiff’s Complaint [1] under 28 U.S.C. § 1915A, Plaintiff states Eighth Amendment claims against Defendants Case, Eddy, Long, McCarty, McGinnis, Robinson, Russell, and Thomas as noted *supra*.**

**3) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has entered an appearance before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before counsel has filed an appearance will be denied as premature. Plaintiff need not submit evidence to the Court unless otherwise directed by the Court.**

**4) The Court will attempt service on Defendants by mailing a waiver of service. Defendant has sixty days from service to file an Answer. If Defendant has not filed an Answer or appeared through counsel within ninety days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After service of process, the Court will enter an order setting discovery and dispositive motion deadlines.**

**5) Concerning a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall submit to the Clerk said Defendant's current work address or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.**

**6) Defendants shall file an Answer within sixty days of the date the Clerk sends the waiver. A motion to dismiss is not an answer. The Answer should include all defenses appropriate under the Federal Rules. The Answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the Answer is necessary or will be considered.**

**7) This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Therefore, Plaintiff does not need to mail copies of motions and other documents that Plaintiff has filed with the Clerk to Defendants' counsel. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Instead, Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order,**

**which will explain the discovery process in more detail.**

8) **Defendants' counsel is granted leave to depose Plaintiff at his place of confinement. Defendants' counsel shall arrange the time for the deposition.**

9) **Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to inform the Court of a change in mailing address or phone number will result in the dismissal of this lawsuit with prejudice.**

10) **If a Defendant fails to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on that Defendant and will require that Defendant to pay the total costs of formal service under Federal Rule of Civil Procedure 4(d)(2).**

11) **The Court directs the Clerk to attempt service on Defendants under the standard procedures.**

ENTERED August 25, 2026.

s/ *Colleen R. Lawless*

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE